|  |  |
|---|---|
| **Hearing Date:** | **January 28, 2004** |
| **Time:** | **9:30 a.m.** |

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- x
:
In re:                                                            :        Chapter 11
:
SCIENT, INC., et al.,                                     :        Case Nos. 02-13455
:        through 02-13458 (AJG)
                                     Debtors.       :
:        (Jointly Administered)
------------------------------------------------------- x

### DEBTORS' MOTION FOR THE ENTRY OF AN ORDER APPROVING A COMPROMISE AND SETTLEMENT WITH GE CAPITAL EQUITY INVESTMENTS, INC., GENERAL ELECTRIC PENSION TRUST, GENERAL ELECTRIC CAPITAL CORPORATION AND GENERAL ELECTRIC CAPITAL ASSURANCE

TO:     THE HONORABLE ARTHUR J. GONZALEZ,
           UNITED STATES BANKRUPTCY JUDGE

Scient, Inc., Scient Enterprises, Inc., iXL Enterprises, Inc., and iXL, Inc. (collectively, the

"Debtors") as debtors and debtors-in-possession,  by and through their undersigned counsel,

move this Court pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure for the

entry of an order approving a compromise and settlement of claims held by the debtor iXL

Enterprises, Inc. ("iXL") against the defendants GE Capital Equity Investments, Inc., General

Electric Pension Trust, General Electric Capital Corporation, and General Electric Capital

Assurance (collectively, the "GE Defendants"), and in support thereof, the  Debtors respectfully

represent:

Thomson U.S., Inc. of approximately $17 million under Section 16(b) of the Securities Exchange Act of 1934.

5.    Section 16(b) of the Securities Exchange Act of 1934, provides that a beneficial owner of more than ten (10) percent of any registered equity security who buys and sells the security within a six month period may be required to disgorge the profits to the issuer. The Complaint alleges that while none of the defendants owned ten (10) percent (or more) of iXL stock, they were nonetheless subject to liability under Section 16(b) because they acted together as a group with respect to acquiring, holding, voting or disposing iXL stock.

### The Motion to Dismiss

6.    On March 1, 2002, the GE Defendants filed a motion to dismiss the Securities Action, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, claiming that the Complaint failed to state a claim upon which relief may be granted.[1]

7.    The GE Defendants' primary argument in its motion to dismiss was that it was improper to group the defendants together to reach the ten (10) percent threshold ownership level as required by Section 16(b). Liability for short-swing profits under Section 16(b) does not attach unless the plaintiff "proves that there was a (1) purchase and (2) sale of [registered equity] securities (3) by an officer or director of the issuer or by a stockholder who [beneficially] owns more than 10% of any one class of the issuer's [registered equity] securities (4) within a six month period." Gwozdzinski v. Zell/Chilmark Fund, L.P., 156 F.3d 305, 308 (2d Cir. 1998).

---

[1]  Mellon Ventures II, LP and Thomson U.S., Inc. also filed motions to dismiss on March 1, 2002. On May 10, 2002, Rosenberg filed a notice of voluntary dismissal as to defendants Mellon Ventures II, LP and Thomson U.S., Inc. only. Nevertheless, Mellon Ventures II, LP and Thomson U.S., Inc. remained part of the group of shareholders which Rosenberg alleged made up the Section 16(b) group holding ten (10) percent (or more) of iXL stock.

Beneficial ownership by a group has been defined by the SEC as "[w]hen two or more persons agree to act together for the purpose of acquiring, holding, voting or disposing of equity securities of an issuer." 17 C.F.R. § 240.13d-5(b)(1). Additionally, the agreement giving rise to the group must have been operative from the time of the short-swing purchase through the matched sale. 15 U.S.C. § 78p(b).

8.    In their motion to dismiss, the GE Defendants argued that the Complaint failed to allege facts evidencing an agreement among the defendants to act together acquire, hold or dispose of iXL common stock. In the Complaint, Rosenberg attempted to establish the requisite agreement of the defendants to act together in two ways: 1) the Third Amended Stockholders Agreement; and, 2) the lock-up agreements. The GE Defendants argued that although the Second Stockholders Agreement was operative at the time of the defendants' purchase of the stock, prior to the sale it was replaced by the Third Amended Stockholders Agreement (the "Stockholders Agreement") which provided the GE Defendants with no rights or obligations of any kind. As such, the GE Defendants claim that at the time of the stock sales (November 18, 1999) the defendants had no obligations to anyone under the Stockholders Agreement and the Stockholders Agreement could not constitute the agreement underlying the Section 16(b) group.

9.    The GE Defendants also argued that the lock-up agreements could not form the basis for a Section 16(b) group. The lock-up agreements were letter-agreements which the defendants and other stockholders entered into with iXL's underwriters, pursuant to which each agreed not to sell or otherwise dispose of their iXL securities for 180 days after the initial public offering. The GE Defendants argued that the lock-up agreements are usual in initial public offerings and underwriters typically require them as a condition to the closing of the initial public offering. The GE Defendants argued that the lock-up agreements were entered into at the

insistence of the underwriters and for the benefit of the underwriters and issuer, and did not represent a concerted agreement among stockholders.

10.    Rosenberg's response to the GE Defendants' motion to dismiss, relied primarily upon the Second Circuit decision <u>Morales v. Quintel Entertainment, Inc.</u>, 249 F.3d 115 (2d Cir. 2001), which held that Section 16(b) group liability may be formed, in part, by lock-up agreements signed by all members of the group. The <u>Morales</u> case and the Securities Action however, have several factual distinctions. First, in <u>Morales</u>, a single lock-up agreement was signed by all of the shareholders making up the group. In the Securities Action, separate lock-up agreements were executed separately by numerous unaffiliated shareholders. In <u>Morales</u>, the shareholders filed various documents with the SEC describing themselves as part of a group owning more than 10% of the relevant stock. No such filings were made in the Securities Action. Further, in <u>Morales</u>, the shareholders simultaneously transferred their shares of stock to short term trusts under the same terms and with the same trustee. There was no similar joint effort by the defendants in the Securities Action. As a result of these distinctions, the <u>Morales</u> decision may not provide any significant precedential support for the 16(b) Claim in the Securities Action.

<b><u>Substitution of Plaintiff</u></b>

11.    On or about July 3, 2003, iXL moved to substitute itself as party plaintiff in the Securities Action on the grounds that in light of iXL's bankruptcy filing, Rosenberg was no longer a proper plaintiff. While normally the fiduciary obligation of officers, directors and shareholders "is enforceable directly by the corporation or through a stockholder's derivative action, it is, in the event of bankruptcy of the corporation, enforceable by the trustee [or debtor in

possession]." Pepper v. Litton, 308 U.S. 295, 306-07 (1939). Accordingly, after the filing of the

Debtors' bankruptcy petition, iXL was the proper party plaintiff.

      12.     Additionally, in July 2003, iXL began negotiation with the GE Defendants to

settle this matter. On September 8, 2003, the Honorable Christopher Droney, United States

District Judge for the District of Connecticut, granted the debtor iXL's motion to substitute. On

the same day, and based upon counsel representations to the Connecticut District Court that the

parties reached agreement to settle this matter, subject to Bankruptcy Court approval, Judge

Droney denied the GE Defendants' motion to dismiss.

      13.     After extensive negotiations, iXL and the GE Defendants have agreed to

compromise and settle the claims alleged in the Securities Action, pursuant to the terms of the

Settlement Agreement which is attached as Exhibit B. Under the settlement, the GE Defendants

have agreed to pay iXL $175,000.00.  In consideration of such payment, the parties have also

agreed to exchange general releases.

## The Settlement is Reasonable and Should be Approved

      14.     To approve a settlement under Bankruptcy Rule 9019(a), the Bankruptcy Court

must make "an informed, independent judgment as to whether a settlement is 'fair and equitable'

and 'in the best interest of the estate.'" In re Drexel Burnham Lambert Group Inc., 134 B.R.

493, 496 (Bankr. S.D.N.Y. 1991) (citing Protective Committee for Independent Stockholders of

TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968); In re International Distrib. Ctrs.,

Inc., 103 B.R. 420, 422 (Bankr. S.D.N.Y. 1989)).

      15.     Also, the court does not need "to decide the numerous questions of law and fact

raised by . . . [the parties] but rather to canvass the issues and see whether the settlement 'fall[s]

below the lowest point in the range of reasonableness.'" Cosoff v. Rodman (in re W.T. Grant

Co.), 699 F.2d 599, 608 (2d Cir. 1983), cert. denied, 464 U.S. 822 (1983) (quoting Newman v.

Stein, 464 F.2d 689, 693 (2d Cir. 1972), cert. denied sub nom. Benson v. Newman, 409 U.S.

1039 (1972); accord, In re Best Products Co., Inc., 168 B.R. 35, 51 (Bankr. S.D.N.Y. 1994),

appeals dismissed, 177 B.R. 791 (S.D.N.Y. 1985), aff'd 68 F.3d 26 (2d Cir. 1995).

      16.    In determining whether a settlement falls within the range of reasonableness,

courts consider the following factors:

> (1) the balance between the likelihood of the plaintiff's or the defendant's success should the case go to trial as compared with the benefits offered of the settlement without the expense and delay of a trial;

> (2) the prospect of a complex and protracted litigation if the settlement is not approved;

> (3) the proportion of the creditors who do not object or who affirmatively support the proposed settlement;

> (4) the relative benefits to be received;

> (5) the nature and breadth of releases to be issued as a result of the settlement; and

> (6) the extent to which the settlement is truly the product of arms-length bargaining and not the product of fraud or collusion.

In re Best Products Co., Inc., 168 B.R. at 50 (quoting In re Fugazy, 150 B.R. 103, 106 (Bankr.

S.D.N.Y 1993)). The Debtors contend that after applying these factors to the present case, the

proposed settlement of the 16(b) Claim is reasonable and should be approved.

      17.    As explained above, the Securities Action was commenced by Rosenberg, a

shareholder of iXL, rather than by any of the Debtors. After the Petition Date, when iXL became

the sole entities entitled to prosecute the Securities Action, the Debtors thoroughly examined the

claims alleged in the Securities Action, reviewing the merits as well as the complexity, expense,

and likely duration of such litigation. Included in this analysis were the arguments of the GE

Defendants as contained in their motion to dismiss and as expressed during conversations

between counsel.

18.    Based upon an analysis of the merits of the Securities Action, the Debtors

concluded that success in the Securities Action is not assured. The Debtors recognize that it

would be difficult to establish that the GE Defendants and the other defendants in the Securities

Action constituted a "group" as defined by Section 13(d) of the Securities and Exchange Act, the

collective holdings of which exceed 10% of iXL's common stock. The Stockholder Agreement

and lock-up agreements reveal little evidence of the requisite agreement among the GE

Defendants and the other defendants to act together acquire, hold or dispose of the iXL common

stock. The leading case law on this issue is clear and, as noted above, factually distinguishable

from the present case.

19.    The prospect of protracted litigation with extensive discovery if the settlement is

not approved is quite high and continued litigation of the Securities Action will undoubtedly be

quite costly to the Debtors' estates that have limited resources. The GE Defendants have

disputed aggressively that the GE Defendants and the other defendants constitute a group by

virtue of the Stockholder Agreement and lock-up agreements. Discovery has not yet begun in the

Securities Action, and given the necessity of proving that the GE Defendants and the other

defendants acted as a group by virtue of the Stockholder Agreement and lock-up agreements,

numerous depositions and extensive document production over many months would be required.

Moreover, the complexity of this case, both with respect to the relevant law and the factual

allegations, insures that substantial resources of the Debtors and its professionals would be

required to continue prosecution of this case.

20. iXL believes that the settlement amount represents a fair settlement when considering the risks and the associated costs of proceeding to trial in the Securities Action. Pursuing the 16(b) Claim would be, at best, extremely difficult. The Debtors have found relatively little precedent or evidence to support the "group" action theory esposed in the Complaint. The Debtors believe that their limited resources would be better directed in other places. The Debtors also believe that the settlement is fair and reasonable and is in the best interest of the Debtors' estates.

21. The releases that the parties will exchange along with the settlement are quite broad, covering all claims which the GE Defendants and their subsidiaries and affiliates have or might have against the Debtors' estates. Unsigned copies of the releases are attached as Exhibit A to the Stipulation of Settlement.

22. Finally, the settlement is the product of arms-length bargaining between counsel for the Debtors and counsel for the GE Defendants, John S. McGeeney, Esq. and James R. Bliss, Esq. of the law firm Paul, Hastings, Janofsky & Walker LLP, 1055 Washington Boulevard, Stamford, CT. The undersigned counsel for the Debtors certify that the settlement is not the product of fraud or collusion.

## Notice

23. In accordance with Rule 9019(a), notice of this motion has been provided to the Office of the United States Trustee, counsel for the Official Committee of Unsecured Creditors, and all other persons who have filed a notice of appearance in these cases. In light of the nature of the relief requested, the Debtors submit that such notice is sufficient and that no further notice need be given. No prior motion for the relief requested herein has been made by Debtors to this or any other Court.

## Waiver of Memorandum of Law

24.     As no novel issue of law is raised by this Motion, the Debtors respectfully request

that the Court waive the requirement set forth in LBR 9013-1(b) that any motion filed shall have

an accompanying memorandum of law.

WHEREFORE, for all the foregoing reasons, the Debtors respectfully request that an

order be entered by the Court approving the compromise and settlement with the GE Defendants

in accordance with the terms of the settlement agreement which is annexed as Exhibit B, and

granting the Debtors such further relief as is proper.

Dated: New Haven, CT
        December 30, 2003

                                SCIENT, INC.
                                SCIENT ENTERPRISES, INC.,
                                IXL ENTERPRISES, INC. and IXL, INC.

By:  /s/ Douglas S. Skalka
        NEUBERT, PEPE & MONTEITH, P.C.
        Douglas S. Skalka (DS-4441)
        James A. Lenes (JL-8264)
        195 Church Street
        New Haven, CT 06510
        Tel: (203) 821-2000
        Fax: (203) 821-2009
        Special Litigation Counsel for the Debtors
        and Debtors-in-Possession

                -and-

        GREENBERG TRAURIG, LLP
        Howard J. Berman (HB-4154)
        200 Park Avenue
        New York, New York 10166
        Tel: (212) 801-9200
        Fax: (212) 801-6400

-and-

GREENBERG TRAURIG, P.A.
Linda Worton Jackson (LW-5067)
1221 Brickell Avenue
Miami, Florida 33131
Tel: (305) 579-0500
Fax: (305) 579-0717

Attorneys for the Debtors
and Debtors-in-Possession

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

---------------------------------------------x

ARON ROSENBERG,

                          Plaintiff,

        - against -

GE CAPITAL EQUITY INVESTMENTS, INC.,
GENERAL ELECTRIC PENSION TRUST,
GENERAL ELECTRIC CAPITAL CORPORATION,
GENERAL ELECTRIC CAPITAL ASSURANCE
COMPANY, MELLON VENTURES II, L.P.,
THOMSON U.S., INC. and iXL ENTERPRISES, INC.,

                          Defendants.

---------------------------------------------x

**301CV2051** (CFD)

Civil Action No.

COMPLAINT

FILED

May 2  12 48 PM '01

U.S. DISTRICT COURT
BRIDGEPORT CONN.
CLERK

JURY TRIAL DEMANDED

November 1, 2001

Plaintiff, by his attorneys, alleges, as follows:

## INTRODUCTION

1.      This is an action to obtain disgorgement of profits realized by defendants from short-swing trading in the common stock of iXL Enterprises, Inc ("iXL" or the "Company") in violation of Section 16(b) of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), [15 U.S.C. §78p(b)] ("Section 16(b)").

2.      Defendants were statutory insiders of iXL through their relationship in a group which in the aggregate beneficially owned more than 10% of the outstanding common stock of iXL and presumptively had access to inside information concerning iXL. During those times, Defendants made many millions of dollars trading iXL common stock.

## PARTIES

3.    Plaintiff Aron Rosenberg is a shareholder of iXL.

4.    Defendant GE Capital Equity Investments, Inc. ("GECE"), a corporation formed under the laws of the State of Delaware, maintains its principal executive offices at 260 Long Ridge Road, Stamford, Connecticut 06927.

5.    Defendant General Electric Pension Trust ("GEPT") is a common law trust formed under the laws of the State of New York and maintains its principal executive offices at 3003 Summer Street, Stamford, Connecticut 06904. The principal business of GEPT is as a pension trust organized for the benefit of certain employees of GE.

6.    Defendant General Electric Capital Corporation ("GECC"), a corporation formed under the laws of the State of New York, maintains its principal executive offices 260 Long Ridge Road, Stamford, Connecticut 06927. Defendant GECE is a wholly-owned subsidiary of GECC.

7.    Defendant General Electric Capital Assurance Company ("GECAC"), a corporation formed under the laws of the State of Delaware, maintains its principal executive offices 6604 West Broad Street, Richmond, Virginia 23230.

8.    As evidenced by a Schedule 13D filed with the SEC on June 18, 1999 on behalf of Defendants GECE, GEPT, GECC and GECAC, these defendants are under common ownership and are therefore collectively referred to herein as "General Electric" or "GE Defendants."

9.    Defendant Mellon Ventures II, L.P. ("Mellon"), a limited partnership formed

2

04/16/03 14:22 FAX 678 553 2188   Document 68-2   Filed 01/30/2004 — Page 14 of 19   Ø 005/017
Case 3:01-cv-02051-CFD   P. 005/017

NOV. -26 01 (MON) 16:28

under the laws of the State of Delaware, maintains its principal executive offices One Mellon

Center, Pittsburgh, Pennsylvania 15258.

10.   Defendant Thomson U.S., Inc. ("Thomson"), a corporation formed under the laws

of the State of Delaware, maintains its principal executive offices at One Station Place, Stamford,

Connecticut 06902.

11.   Defendant iXL Enterprises, Inc. is incorporated under the laws of the State of

Delaware and maintains its principal executive offices at 1600 Peachtree Street, NW

Atlanta, Georgia 30309. The Company's common stock ("Common Stock") is and, at all times

relevant, was registered with the SEC pursuant to Section 12 of the Exchange Act and trades on

the National Association of Dealers Quotron System ("NASDAQ") under the symbol IIXL. This

action is brought by plaintiff in order to obtain a recovery for the Company.

## JURISDICTION AND VENUE

12.   Jurisdiction of this Court is proper pursuant to Section 27 of the Exchange Act [15

U.S.C. §78aa]. Venue is properly laid in this District because the Defendants GECE, GECC,

GEPT ane Thomson are located in this District.

## CLAIM FOR RELIEF

13.   This Claim for relief is brought by Plaintiff on behalf of the Company against

General Electric pursuant to Section 16(b) of the Exchange Act.

### Background

14.   Prior to iXL's June 8, 1999 initial public offering ("IPO"), the GE Defendants

beneficially owned at least the following iXL securities: 2,500 shares of Class D Nonvoting

Preferred Stock purchased by GECC for $2,500,000 on August 31, 1998; 5,000 shares of Class A

3

Convertible Preferred Stock purchased by GECAC for $5,000,000 on January 15, 1999; warrants to purchase 1,000,000 shares of common stock at an exercise price of $15.00 per share acquired by GECE in April 1999; and 15,384 shares of Class B Convertible Preferred Stock and warrants to purchase 1,775 shares of Class B Convertible Preferred Stock purchased for $4,999,800 by GECC on December 23, 1997.

16.     In connection with the above purchases the GE Defendants entered into various Securities Purchase Agreements with the Company. Those Securities Purchase Agreements contained a provision allowing the GE Defendants access to confidential corporate information of the Company. Specifically, Section 6.2 of the January 15, 1999 Securities Purchase Agreement titled Inspection of Properties and Records states:

> Until the closing of the IPO, the Company agrees to allow, and to cause each of its Subsidiaries to allow, each Investor or subsequent Holder who continues to hold Shares with an original cost of at least $1,000,000 (or, such Persons as any of them may designate) (individually and collectively, "Inspectors"), subject to appropriate agreements as to confidentiality, (i) to visit and inspect any of the properties of the Company or any of its Subsidiaries, (ii) to examine all their books of records, reports and other papers and to make copies and extracts therefrom, (iii) to discuss its affairs, finances and accounts with its officers employees, and (iv) to discuss the financial condition of the Company and Subsidiaries with their independent accountants upon reasonable notice to the Company of its intention to do so and so long as the Company shall be given the reasonable opportunity to participate in such discussions (and by this provision the Company authorizes such accountants to have such discussions with the Inspectors) . . . .

17.     Similarly, when Mellon and Thomson bought the iXL securities described in paragraph 36 below they too entered into a Securities Purchase Agreement which contained the identical clause. Thus the GE Defendants, Mellon and Thomson had access to confidential iXL corporate information prior to purchasing iXL securities.

4

18.    Immediately prior to its IPO of 6,000,000 shares of common stock, as of June 2, 1999, iXL had 57,547,800 shares of common stock outstanding.

19.    In a Prospectus filed with the SEC on or about June 3, 1999, the Company disclosed that iXL's largest shareholder prior to its IPO, as well as post IPO, was Kelso Investment Associates V, L.P. and Kelso Equity Partners V, L.P. ("Kelso") which beneficially owned 15,656,096 shares of common stock or 27.2% of the shares outstanding prior to the IPO and 24.6% of the shares outstanding after the IPO.[1]

20.    The GE Defendants owned 5,204,159 shares of iXL common stock or 9.0% of the common stock outstanding before the IPO and 8.1% of the common stock outstanding after the IPO.

**The GE Defendants, Mellon and Thomson Were Statutory**
**Insiders Within The Meaning Of Section 16(b)**

21.    On June 3, 1999, upon iXL's registration statement on Form S-1 ("Registration Statement") becoming effective, iXL's common stock was deemed to be registered with the SEC pursuant to Section 12 of the Exchange Act.

22.    The GE Defendants, Mellon and Thomson, directly or indirectly, acted together with Kelso, among others, as a group with respect to acquiring, holding, voting or disposing of the equity securities of iXL which they acquired and owned. This concerted action is evidenced by, among other things, an Investor Stockholders Agreement dated as of April 30, 1996 (the

---

[1] Kelso is not named as a defendant in this action but rather as a member of a group together with the GE Defendants, Mellon and Thomson and whose beneficial ownership of iXL securities are thereby attributed to them for the purpose of causing the GE Defendants, Mellon and Thomson to be the beneficial owner of more than 10% of iXL's common stock under Section 16(b) as more fully alleged in ¶¶ 21-31.

5

"Stockholders Agreement"), as amended on December 23, 1997, March 30, 1998 and August 14, 1998, to which Kelso, the GE Defendants, Mellon and Thomson, among others, are parties.

23.    Neither the GE Defendants, Mellon nor, Thomson were original signatories to the Stockholders Agreement but agreed to abide by its terms in connection with their various purchases of iXL securities, to wit: the GE Defendants' January 15, 1999 purchase of 5,000 shares of Class A Convertible Preferred Stock; and, Mellon's and Thomson's purchase of Class D Convertible preferred Stock in August 1998, among other purchases.

24.    The original Stockholders Agreement contained certain provisions which restricted the ability of any signatory thereto from transferring iXL securities except pursuant to its terms including prohibiting the transfer of iXL securities without the advance written approval of Kelso or only in the event that Kelso was itself selling iXL securities to a non-affiliated entity and requesting that other stockholders participate in such sale.

25.    While the amended Stockholders Agreement ("Amended Stockholders Agreement") is not attached to any iXL filings with the SEC, a November 3, 1998 Warrant Agreement between the Company and General Electric, among other filings, refers to the restrictions on transfer contained in the Second Amended and Restated Stockholders Agreement of the Company.

26.    In connection with its IPO, iXL and Kelso, General Electric, Mellon and Thomson, among others, entered into a Third Amended And Restated Stockholders' Agreement ("Third Agreement"). The Third Agreement gave Kelso the right for so long as it held 5% or more of the outstanding Common Stock to designate two individuals as nominees to iXL's board of directors.

6

27. Similarly, the Third Agreement gave a second investor the right for so long as it held 5% or more of the outstanding Common Stock to designate one individual as an iXL's board of directors nominee. The Third Agreement did not obligate any of the other signatories to vote in favor of the Kelso or other nominees.

28. Also, in connection with the IPO, Kelso, the GE Defendants, Mellon and Thomson, among others, entered into a lock-up agreement with the IPO's underwriters whereby they agreed that for period of 180 days after the date of the IPO they would not offer, sell or otherwise dispose of, any shares of common stock, options or warrants to acquire shares of common stock or securities exchangeable for or convertible into common stock.

29. Also in connection with the Company's secondary offering in November Kelso, the GE Defendants, Mellon and Thomson, among others, entered into a lock-up agreement with the IPO's underwriters whereby they agreed to restrict their respective abilities to dispose of iXL securities during a period of 90 days from the date of the Secondary Offering without the prior written consent of Merrill Lynch, the lead underwriter.

30. As members of the aforementioned group, pursuant to the provisions of the rules promulgated by the SEC pursuant to Section 13(d) of the Exchange Act, including without limitation, Rule 13d-3 and Rule 13d-5, which also govern the determination of beneficial ownership for purposes of Section 16 pursuant to Rule 16a-1(a)(1) promulgated thereunder by the SEC, Kelso, the GE Defendants, Mellon and Thomson were each the beneficial owner of the iXL equity securities beneficially owned by the other members of the group, including Kelso.

31. As a result of the Registration Statement being deemed effective, Kelso, the GE Defendants, Mellon and Thomson each became the beneficial owner of more than 10% of iXL's

7

outstanding common stock registered under Section 12 of the Exchange Act. Therefore, at all relevant times the GE Defendants, Mellon and Thomson were each subject to Section 16(b) liability by virtue of their beneficial ownership of more than 10% of iXL's outstanding registered common stock.

**The GE Defendants Purchase iXL Common Stock**

32.    In a Schedule 13D filed with the SEC on or about June 18, 1999, the GE Defendants disclosed that on or about June 8, 1999, the date the IPO closed, it purchased 2,000,000 shares of Common Stock at the IPO price of $12.00 per share for an aggregate purchase price of $24 million. The Company also issued to the GE Defendants warrants in connection with the IPO to purchase 1,500,000 shares of Common Stock at the IPO price, or $12.00 per share. The consummation of the IPO was a condition precedent to the GE Defendants' purchase.

**The GE Defendants' Sales of iXL Common Stock**

33.    Within six months of this purchase, on or about November 18, 1999, in a secondary offering conducted by the Company, the GE Defendants sold approximately 692,588 shares of Common Stock at approximately $37.00 per share.

34.    These sales are matchable against the purchases alleged above which occurred within six months of the sales. A $25.00 profit per share (the difference between a $37.00 sale price per share less the $12.00 purchase price per share) multiplied by the 692,588 shares the GE Defendants are believed to have sold, as alleged above, yields profits of millions of dollars. Accordingly, the GE Defendants' profits are recoverable by iXL under Section 16(b).