IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

```
------------------------------------ x
ARON ROSENBERG,                         :
                                        :
                Plaintiff,              :   Civil Action No.
                                        :   3:01 CV 2051 (CFD)
        - against -                     :
                                        :
GE CAPITAL EQUITY INVESTMENTS, INC.,    :
GENERAL ELECTRIC PENSION TRUST,         :
GENERAL ELECTRIC CAPITAL CORPORATION,   :
GENERAL ELECTRIC CAPITAL ASSURANCE      :
COMPANY, MELLON VENTURES II, L.P.,      :
THOMSON U.S., INC.                      :
and iXL ENTERPRISES, INC.,              :
                                        :
                Defendants.             :   February 3, 2004
--------------------------------------x
```

**SUPPLEMENTAL MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION FOR
RELIEF FROM ORDER, OR IN THE ALTERNATIVE,
<u>MOTION TO INTERVENE</u>**

Aron Rosenberg ("Rosenberg"), through his undersigned counsel, respectfully submits this supplemental memorandum of law in further support of his motion for relief from the September 8, 2003 Order granting a Motion to Substitute (the "Order") or, in the alternative, to intervene in this action and in response to the Memorandum in Opposition to Rosenberg's Motion for Relief From Order, Motion to Intervene, Motions for Admission of Visiting Attorney, and Motion to Stay any Consideration of the Settlement "Opposition Memorandum").

**ARGUMENT**

This is an action arising under Section 16(b) of the Securities Exchange Act of 1934 brought in order to recover unlawful profits exceeding $17 million realized by defendant GE Capital Corp. and several other related entities (the "GE Defendants" or "GE") which GE is

attempting to settle for $175,000 - - or approximately *a penny on the dollar* - - even after the underlying claims have survived a motion to dismiss. This settlement effort is predicated upon iXL successfully removing Rosenberg as a plaintiff in this action which "special counsel" for iXL has advocated to this Court through the distortion of applicable law and upon premature assumptions concerning Rosenberg's standing to pursue his Section 16(b) claim. Furthermore, consideration of the proposed settlement is inappropriate at this time, since the Bankruptcy Court has not yet heard or considered iXL's application for approval of the proposed sweetheart settlement to which Rosenberg has objected.

I.    **This Court Should Set Aside The Order Since it is Inconsistent With Principles of Law Governing Actions Arising Under §16(b) and is the Result of a Mistake**

Section 16(b) contains a specific statutory scheme for the commencement of lawsuits. A plaintiff security holder makes a demand on the issuer's board of directors to commence an action. If the lawsuit is not filed by the issuer, the security holder may file his (or her) own lawsuit. *See* 15 U.S.C. §78p(b). The ability to bring such a Section 16(b) action without the approval or consent of an issuer (*i.e.*, iXL) is statutorily conferred upon security holders by the language of Section 16(b). *See, e.g., Dottenheim v. Murchinson*, 227 F.2d 737, 738-39 (5th Cir. 1955), *cert. denied*, 315 U.S. 919 (1956); *see also Blau v. Albert,* 157 F. Supp. 816, 818 (S.D.N.Y. 1957) (citing *Blau v. Mission Corp.*, 212 F.2d 77, 79 (2d Cir.), *cert. denied*, 347 U.S. 1016 (1954); *Pelligrino v. Nesbitt*, 203 F.2d 463, 466 (9th Cir. 1953)).

Here, iXL refused a demand properly made by Rosenberg to commence the underlying Section 16(b) action. Therefore, acting in accordance with the statutory provisions of Section 16(b), Rosenberg commenced this lawsuit in order to recover the illegal short-swing profits earned by the General Electric entities named as defendants in this action. GE, thereafter, moved

to dismiss Rosenberg's complaint, which Rosenberg opposed.[1]  The Court denied GE's motion in September 2003.

The Motion to Substitute misstated the controlling principles of law by treating the Section 16(b) claim as an ordinary shareholder derivative action. That, however, is not correct. Every case which has considered the issue has instead held that Section 16(b) "creates a new cause of action, which, while similar in some respects to a secondary or derivative right, *is not such a right at all*." *Dottenheim*, 227 F.2d at 738.  *See also FDIC v. American Bank Trust Shares, Inc.*, 558 F.2d 721, 726 (4th Cir. 1977); *Blau v. Oppenheim*, 250 F. Supp. 881, 885 (S.D.N.Y. 1966).  The Second Circuit has also specifically held that general principles applicable to shareholder derivative actions as embodied in Rule 23.1 of the Federal Rules of Civil Procedure cannot over ride the direct statutory mandate of Section 16(b). *See Blau v. Mission Corp.*, 212 F.2d 77, 79 (2d Cir.), *cert. denied*, 347 U.S. 1016 (1954).  Indeed, even the Supreme Court has endorsed a different rule of plaintiff standing for Section 16(b) actions than that which prevails in ordinary shareholder derivative actions.  *See Gollust v. Mendell*, 501 U.S. 115 (1991).

The rights of the issuer (*i.e.*, iXL) are, in reality, secondary in a Section 16(b) action. Instead, the statute, "was primarily intended as an instrument of a statutory policy of which the general public is the ultimate beneficiary." *Epstein v. Shindler*, 26 F.R.D. 176. 178 (S.D.N.Y. 1960).  The issuer is only "an instrument [which is] sometimes unwilling, for the effectuation of a statutory policy." *Magida v. Continental Can Co.,* 231 F.2d 843, 846-47 (2d Cir.), *cert denied*, 351 U.S. 972 (1956).

---

[1] Discovery in an action arising under Section 16(b), like in all other actions arising under the Securities Exchange Act of 1934, is statutorily stayed during the pendency of a motion to dismiss.  *See* 15 U.S.C. §78u-4.

Thus, bankruptcy does not change the state of affairs allowing a security holder making proper demand to control the prosecution of a Section 16(b) lawsuit. Bankruptcy does not transform a Section 16(b) lawsuit into property of the estate. The only known decision directly addressing this issue, *Schaeffer v. CC Investments, LDC*, 286 F. Supp.2d 279 (S.D.N.Y. 2003), completely supports Rosenberg's position. In *Schaeffer*, based upon the statutory language of §16(b) and statutory policy, Judge Marrero rejected an effort to make a Section 16(b) claim property of a bankrupt estate. Specifically, *Schaeffer* offered the following four bases for the conclusion that a Scetion 16(b) action is not property of a bankrupt estate:

    1.    A §16(b) cause of action is a statutory enabling right directly empowering the shareholder to sue; it is not a derivative or secondary right grounded on rights and interests possessed primarily by the corporation and emanating from common law. Instead, §16(b) "amounts to an enforcement right that, if successful, enables the corporation to gain from the redistribution of insiders' illicit profits to which the corporation had no right of recovery under common law causes of action." *Scheffer*, 269 F. Supp. 2d at 282 (citing *Dottenheim*, 227 F.2d at 738; *Blau v. Oppenheim*, 250 F. Supp. 881, 885 (S.D.N.Y. 1966) (Weinfeld, J.); *Pottish v. Divak*, 71 F. Supp. 737, 738-39 (S.D.N.Y. 1947)).

    2.    Section 16(b) "was enacted because of the 'national public interest which makes it necessary to provide for regulation and control of such transactions.'" *Schaeffer*, 286 F. Supp. 2d at 282 (quoting 15 U.S.C. § 78b); *see also Feder v. Martin Marietta Corp.*, 406 F.2d 260, 262 (S.D.N.Y. 1969). Shareholder derivative actions, in contrast, are intended to vindicate different objectives.

      3.      Unlike a traditional shareholder derivative action, a Section 16(b) action is intended "to protect, not just the narrow community of interests of the corporation, but the interests of the general public in full disclosure and honest dealing in transactions involving corporate insiders that may affect the value of investments in the corporation's shares and the integrity of the securities markets." *Schaeffer*, 286 F. Supp. 2d at 283.

      4.      The independent statutory mandate of Section 16(b) should not be extinguished by provisions of the Bankruptcy Code "without an explicit or compelling expression by Congress that in fact such adjustment of the clashing statutory interests involved represents its intent." *Schaeffer*, 286 F. Supp. 2d at 283.

Rosenberg notes that these issues were not addressed in any meaningful fashion in the Motion to Substitute. In addition, the Motion to Substitute neglects to mention that substitution of an issuer as a party plaintiff appears to be otherwise unprecedented in the 70 year history of Section 16(b). The statute does not provide any mechanism for eliminating a security holder plaintiff based upon a motion made by the issuing company. Absent such statutory authority and given the contrary statutory scheme, allowing such a procedure would contravene Supreme Court authority that statutes in the federal securities laws are to be construed strictly according to their terms. *See, e.g., Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164 (1994) (no cause of action for aiding and abetting a violation of Section 10(b) of the Exchange Act exists because the statute does not expressly provide for such a claim). Moreover, "it is the security holders of an issuer who have the ultimate authority to sue for enforcement of [Section] 16(b)." *Gollust v. Mendell*, 501 U.S. at 122. Indeed, the furthest that any court has ever gone when dissatisfied with the diligence of the prosecution of the claims by the named

plaintiff has been to allow the issuing corporation (*i.e.*, iXL) to ***intervene*** as a party plaintiff. *See Silverman v. Re*, 194 F. Supp. 540, 542 (S.D.N.Y. 1961). There is to Rosenberg's knowledge no case (other than this one) in which the plaintiff has ever been removed from that status.

*Rosenberg v. XM Ventures*, 274 F.3d 137, 139 (3d Cir. 2001) and *Levner v. Saud*, 61 F.3d 8 (2d Cir. 1995), cited in the Opposition Memorandum, are not on point. Those cases do, in passing, identify §16(b) actions as derivative but only in order to identify which entity would receive the pecuniary benefit from a successful resolution of the lawsuit. *Rosenberg* and *Levner* do ***not***, however, hold that §16(b) lawsuits are subject to all the same procedural constraints of a shareholder derivative lawsuit being pursued for state law remedies. That issue was never briefed or considered in those actions as evidenced by the fact that there is no discussion of the underlying issues as encountered and carefully considered in *Dottenheim* and *Blau*. As such, at most, the passing mention that the claims are derivative in nature is mere dicta and, as such, is neither controlling nor entitled to any deference by this Court. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 379 (1994) ("It is to the holdings of our cases, rather than their dicta, that we must attend.")

Therefore, the Order - - through no fault of the Court - - is inconsistent with the well-developed body of cases governing Section 16(b) actions and the plain language of the statute which does not provide for an issuer to substitute as a named plaintiff for a security holder who properly commenced a Section 16(b) action.

**B.     This Court has the Authority to set Aside the Order**

In seeking to avoid having the Order set aside, the GE Defendants argue that the culpability of Rosenberg's counsel in the underlying circumstances precludes discharge of the

6

Order pursuant to Rule 60(b)(1) of the Federal Rules of Civil Procedure claiming that the excusable neglect described in Rosenberg's opening papers does not suffice for purposes of Rule 60(b)(1).  Rosenberg, however, believes that given the unique circumstances of this case, the standards of that rule have been met.

However, even if they are not, this Court still has the authority pursuant to Rule 60(b)(6) to set aside the Order.  The language of the rule is broad and allows a court to act "for any other reason justifying relief from the operation of the judgment."  Fed. R. Civ. P. 60(b)(6).  Although the rule is to be used only in extraordinary circumstances (*Rinieri v. News Syndicate Co.*, 385 F.2d 818, 820 (2d Cir. 1967)), such extraordinary circumstances exist where a court order is contrary to law.  *See, e.g., Breedlove v. Cabou*, 2003 U.S. Dist. LEXIS 22460 at * 35-39 (N.D.N.Y.  Dec. 11, 2003) (setting aside an order entered against *GE* as being contrary to the established body of law arising under the Federal Arbitration Act); *Enrico v. Russo, Garguilo & Fox,* 1999 U.S. Dist. LEXIS 19999 (E.D.N.Y. Oct. 22, 1999).  *Accord ACE Equipment Ltd. v. American Engineering Corp.*, 218 F.R.D. 364, 366 (D. Conn. 2003) (Dorsey, J.).  Indeed, at least one appellate court has held that it is an abuse of discretion not to vacate a judgment or order pursuant to Rule 60(b)(6) where it is contrary to law.  *See Cincinnati Ins. Co. v. Byers*, 151 F.3d 574, 580 (6th Cir. 1998) ("Justice would certainly not be served by penalizing [a party] for the failure of the district court to consider the controlling law of Ohio at the time . . . . ").

Therefore, because the Order was based on unopposed motion which entirely misapprehended and failed to properly describe or discuss either the relevant cases or the statutory language of Section 16(b), this Court has the discretion which it should exercise to set aside the Order.

**C.     In the Alternative, Rosenberg Should be Given Leave to Intervene in This Action**

Intervention by a security holder in a pending Section 16(b) action is a statutory right where an issuer "fail[s] diligently to prosecute" the lawsuit. 15 U.S.C. §78p(b); *see also Molybdenum Corp. of America v. Intern. Mining Corp.*, 32 F.R.D. 415, 419 (S.D.N.Y. 1963) (citations omitted.) Courts have liberally interpreted this standard in order to permit security holders to intervene in Section 16(b) cases. *See, e.g., Park & Tilford v. Schulte*, 160 F.2d 984 (2d Cir. 1947), *cert. denied*, 332 U.S. 761 (1947); *Farraiolo v. Newman*, 250 F.2d 342 (6th Cir. 1958), *cert. denied*, 359 U.S. 927 (1959); *Molybdenum Corp. of America, supra*.

Here, the primary issue in the case is whether the GE Defendants were part of a group beneficially owning more than 10% of iXL's common stock during the time they engaged in short-swing insider trading. The controlling case in this Circuit on that issue is *Morales v. Quintel Entertainment, Inc,*, 249 F.3d 115 (2d Cir. 2001), which based upon the language of the applicable rules as well as an *amicus* brief submitted by the Securities and Exchange Commission determined that the standard for pleading the existence of and establishing the proof of such a group is a relatively liberal one. Following briefing ***by Rosenberg opposing GE's motion to dismiss in which iXL took absolutely no part***, this Court denied defendants' motion to dismiss in September 2003, a result consistent with that of other courts considering the issue in the aftermath of *Morales*. *See, e.g., Donoghue v. Genomica Corp.,* 2003 U.S. Dist. LEXIS 3183 (S.D.N.Y. March 6, 2003) (Preska, J.); *Schaeffer v. CC Investments, LDC*, 2002 U.S. Dist. LEXIS 24511 (S.D.N.Y. Dec. 19, 2002) (Marrero, J.).

It is not clear what, if any, actual diligent prosecution of this lawsuit took place after the motion to dismiss was resolved in Rosenberg's favor. There do not appear to have been any

8

depositions taken or, even for that matter, any material document discovery undertaken by iXL. Instead, iXL rushed to settle a case with more than $17 million in damages for $175,000 or slightly more than *one penny* on the dollar.  Even if this lawsuit has no merit whatsoever - - which is not the case - - the proposed settlement is even less than what would ordinarily be perceived to be the nuisance value of the case.

Settlements like the one proposed by iXL here do not achieve either a material recovery for the issuer or any deterrence effect whatsoever for the prevention of short-swing insider trading profits.  The settlement is wrong for this case and wrong for the effective enforcement of the federal securities laws.  IXL has, through its sweetheart bargain basement settlement demonstrated that it has not and will not diligently prosecute this case.  Thus, Rosenberg, if not reconstituted as the name plaintiff, should be allowed to intervene in this action.

The Opposition Memorandum argues that Rosenberg lacks standing because even if a completely successful recovery is achieved in this action, shareholders of iXL such as Rosenberg will not receive any proceeds from the claim.  This argument is premature and must fail at this time because there is no Bankruptcy Court order approving a plan of reorganization or laying out the priorities and rights of claimants.  Notwithstanding the GE Defendants assertion that $33 million dollars in claims have been filed, there has not been any determination as to which claims will be allowed.

Moreover, the allegation by GE Defendants that iXL Enterprises, Inc. has claimed liabilities in excess of $33 million is inconsistent with the Summary of Schedules filed with the Bankruptcy Court indicating total liabilities in the amount of $9,916,624.14 (a copy of the Summary of Schedules is attached hereto as Exhibit A).  Thus, Rosenberg's claim actually

9

exceeds iXL's total liabilities.  To the extent the GE Defendants in asserting the existence of $33 million in liability are including the liabilities of iXL's parent company, the GE Defendants have failed to recognize that absent a showing that a subsidiary is a mere instrumentality of the parent, or that the parent used its control over the subsidiary to commit fraud, a court is not empowered to pierce the corporate veil in order to satisfy a parent's liabilities from the assets of a subsidiary.  *See In re Overmyer*, 24 B.R. 437, 441 (S.D.N.Y. 1982) ("The parent and the subsidiary corporation must be regarded as separate entities for the purpose of enforcing their own claims, including the filing of separate complaints to determine the dischargeability of such claims."); *Sec. Investor Prot. Corp. v. Stratton Oakmont, Inc.*, 234 B.R. 293, 323 (S.D.N.Y. 1999) (noting that holding a subsidiary liable for the obligations of its parent, or "reverse veil piercing" is rare; control relationship is a "necessary but not sufficient condition for finding liability.").

Finally, since Rosenberg firmly believes that the proposed settlement is not fair or adequate and undermines the efficacy of the federal securities laws, he is negotiating to acquire by assignment a claim filed with the Bankruptcy Court against iXL which under the circumstances will provide him with an unquestionable pecuniary interest in the outcome of this litigation and requests sufficient time to complete these negotiations.  *See Gollust, supra*.

**D.     The GE Defendants and the Opposition Memorandum Improperly Assume That the Bankruptcy Court Will Approve the Proposed Settlement**

A hearing on the proposed settlement was originally scheduled before the Bankruptcy Court for Wednesday, January 28, 2004.  Rosenberg timely filed an objection to the proposed settlement.  Douglas Skalka, the special counsel for iXL, caused that hearing to be postponed for a period of two weeks or until February 11, 2004.  Therefore, as matters stand now, the proposed settlement presented to the Bankruptcy Court is contested and the hearing is at least days off.

10

Such approval is not a foregone conclusion. If, as Rosenberg expects, approval is denied (or, alternatively, any such approval is appealed), it will be necessary to have this action on file as a venue in which to litigate the claims. Thus, until the Bankruptcy Court grants the approval sought, this Court should not consider a motion directed at dismissal of this case.

## CONCLUSION

Therefore, for the reasons set forth above, this Court should, pursuant to the provisions of Rule 60(b) set aside the Order or, in the alternative, allow Rosenberg to intervene in this action.

                 THE PLAINTIFF

                 By:_____
                 J. Daniel Sagarin CT04289
                 David A. Slossberg CT13116
                 HURWITZ & SAGARIN, LLC
                 147 North Broad Street
                 Milford, Connecticut 06460
                 Telephone: 203-877-8000

OF COUNSEL:

Jack G. Fruchter
Mitchell M.Z. Twersky
FRUCHTER & TWERSKY
1 Penn Plaza, Suite 1910
New York, NY 10119
Telephone: (212) 279-5050
Facsimile: (212) 279-3655

Jeffrey S. Abraham
ABRAHAM & ASSOCIATES
1 Penn Plaza, Suite 1910
New York, NY 10119
Telephone: (212) 714-2444
Facsimile: (212) 279-3655

Certificate of Service

      This is to certify that a copy of the foregoing was sent by facsimile and overnight mail on February 3, 2004 to:

J. Steve McGeeney, Esq.
James R. Bliss, Esq.
1055 Washington Boulevard
Stamford, CT  06901

Douglas Skalka, Esq.
James A. Lenes, Esq.
Neubert, Pepe & Monteith,  P.C.
195 Church St., 13th Floor
New Haven, CT  06510

Robert A. Horowitz, Esq.
Greenberg Traurig, LLP
885 Third Avenue
21ST Floor
New York, NY 10022

Jack G. Fruchter, Esq.
Mitchell M.Z. Twersky
FRUCHTER & TWERSKY
1 Penn Plaza, Suite 1910
New York, NY 10119

Jeffrey S. Abraham, Esq.
ABRAHAM & ASSOCIATES
1 Penn Plaza, Suite 1910
New York, NY 10119

                                        _____
                                        David A. Slossberg