UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| iXL ENTERPRISES, INC., : | |
|     Plaintiff, : | |
| : | |
| v. : | Civil Action No. 3:01cv2051 (CFD) |
| : | |
| GE CAPITAL CORP, ET AL. : | |
|     Defendant, : | |
| : | |

**RULING ON VARIOUS MOTIONS**

Aron Rosenberg ("Rosenberg") commenced this action against the defendants, GE Capital Equity Investments, Inc., GE Pension Trust, GE Capital Corporation, GE Capital Assurance Corporation, Mellon Ventures II, L.P., Thomson U.S., Inc., and iXL Enterprises (collectively "the defendants"), pursuant to Section 16(b) of the Securities Act of 1934 ("the 1934 Act").  iXL Enterprises subsequently filed a motion to substitute itself as plaintiff in this action, which was granted by endorsement order, absent objection.  Now pending before the Court are three motions from Rosenberg: (1) a motion for relief from order pursuant to Fed. R. Civ. P. 60; (2) a motion to intervene pursuant to Fed. R. Civ. P. 24(a) and (b); and (3) a motion to stay any consideration of settlement.

**I.      Background**

      The complaint originally filed by Rosenberg sets forth claims alleging unlawful short-swing insider trading profits by the defendants in the stock of iXL Enterprises, Inc. ("iXL").  Although none of the defendants individually owned more than 10% of iXL stock, the complaint alleges that they were nonetheless liable under Section 16(b) of the 1934 Act because they acted together with respect to acquiring, holding, voting and disposing of iXL stock.   Rosenberg

claimed damages in excess of $17 million.[1]  The complaint was filed on behalf of Rosenberg by J. Daniel Sagarin, Elias A. Alexiades and David Slossberg of Hurwitz & Saragin, LLC, in Milford, Connecticut, all of whom entered appearances with the Court on the date of filing.  Two additional attorneys, Jeffrey Abraham and Jack Fruchter, both of New York City (collectively "New York counsel"), were listed as "Of Counsel" on the complaint, yet they did not file appearances in this matter at that time.  On January 8, 2002, Margaret Hearing, also of Hurwitz & Saragin, filed an appearance on behalf of Rosenberg.

In July 2002, iXL filed for bankruptcy protection in the Southern District of New York.[2]  On July 3, 2003, pursuant to Rules 17 and 25(c) of the Federal Rules of Civil Procedure, iXL filed a motion to substitute itself as plaintiff in this action, claiming that, because Rosenberg's action was derivative in nature, it was property of the bankruptcy estate.  The certification of service attached to that motion indicates that a copy was "sent via first-class United States mail, postage prepaid, on July 2, 2003, to J. Daniel Sagarin, Margaret Haering and David Slossberg" at Hurwitz & Saragin, and was not sent to Rosenberg's New York counsel, who had not yet filed appearances.  Rosenberg's local counsel never responded to the motion to substitute, nor, according to affidavits submitted in support of the pending motion, forwarded it to Rosenberg's

---

[1]The prohibition against short swing trading set forth in Section 16(b) is applicable to "[e]very person who is directly or indirectly the beneficial owner of more than 10 percent of any class of any equity security (other than an exempted security) which is registered pursuant to section 12 [15 USCS § 78l], or who is a director or an officer of the issuer of such security . . . ."  15 U.S.C. 78p(b).

[2]According to the affidavit of David Wood ("Wood"), the Chief Restructuring Officer of Scient, Inc. ("Scient"), iXL was merged into Scient in November 2001.  As a result of this merger, Scient obtained 100% of the outstanding shares of iXL, and iXL shareholders at the time of the merger received shares of Scient on a share-for-share basis.  On July 16, 2002, Scient, Scient Enterprises, Inc., iXL and iXL, Inc., (collectively "the Debtors") filed for bankruptcy protection in the Southern District of New York.  Scient then was de-listed from the NASDAQ exchange, and substantially all of the Debtor's assets were sold to SBI and Company, a privately held company, in a sale approved by the bankruptcy court.

New York counsel. On September 9, 2003, this Court granted that motion by endorsement order, absent objection. On January 9, 2004, Rosenberg's New York counsel filed motions to be admitted pro hac vice on behalf of Rosenberg. At that time, the clerk of the court informed them that Rosenberg was no longer a party to this action due to the motion to substitute having been granted by this Court. Rosenberg then filed the three motions currently pending before the Court, each of which will be addressed in turn.

## II.   Motion for Relief from Order [Doc. # 61]

Rosenberg first claims that this Court should set aside its order granting the motion to substitute plaintiff, afford him an opportunity to respond to that motion and allow him to participate in future proceedings in this action. The defendants claim that Rosenberg is not entitled to the relief sought.

Rosenberg's motion seeks relief pursuant to Fed. R. Civ. P 60(b), which provides, in pertinent part:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect . . . .

Rosenberg's brief in support of his motion for relief from order states that he is moving pursuant to Rule 60(b) for relief from an order "based on clerical mistake or excusable neglect." Each argument will be addressed in turn.[3]

---

[3] In his main brief, Rosenberg failed to argue that this Court should vacate its prior ruling under Rule 60(b)(6), which applies to "any other reason justifying relief from the operation of the judgment." In his reply to the defendants' memorandum in opposition to his motion for relief, however, Rosenberg sets forth an extensive argument that this Court's prior ruling should be vacated under subpart (6) as being contrary to law. A reply brief "must be strictly confined to matters raised by the responsive brief . . . ." Local R. Civ.P. D.Conn. 7(a)(2); see also American Lines, LLC v. CIC Ins. Co., A.V.V., S.A., 2004 WL 2381717, at *8 (D.Conn. Sept. 30, 2004) ("The Local Rules are not merely the hopes, dreams, or suggestions of this court; they make up the framework within which cases are decided in this district. They cannot be disregarded on a whim, nor will they be waived without a substantial showing of necessity"). Rosenberg had the

A) "Mistake"

The decision as to whether relief should be granted under Rule 60(b) is committed to the sound discretion of the Court. Securities and Exchange Commission v. McNulty, 137 F.3d 732, 738 (2d Cir. 1998); National Petrochemical Co. v. M/T Stolt Sheaf, 930 F.2d 240, 244 (2d Cir. 1991). "[A]s a general proposition, the 'mistake' provision in Rule 60(b)(1) provides for the reconsideration of judgments only where: (1) a party has made an excusable litigation mistake or an attorney in the litigation has acted without authority from a party, or (2) where the judge has made a substantive mistake of law or fact in the final judgment or order." Cashner v. Freedom Stores, Inc., 98 F.3d 572, 576 (10th Cir. 1996) (quoting Moore, Federal Practice ¶ 60.22[2], pgs. 175-179); accord In re 310 Associates, 346 F.3d 31, 35 (2d Cir. 2003) (noting that "mistake" in Rule 60(b)(1) applies to mistakes of both a party and a court).[4]  Again, Rosenberg's brief focuses on the alleged mistake of his counsel in responding to the motion to substitute, and does not allege that this Court committed a mistake of law or fact in deciding the motion to substitute. Consequently, his motion for relief will only be reviewed under the first ground identified above.

The Second Circuit has consistently refused to relieve a client of the burdens of a final judgment entered against him due to the mistake or omission of his attorney by reason of the

---

opportunity to raise that claim in his initial motion, and yet failed to do so.

Moreover, Rosenberg's Rule 60(b)(6) argument essentially argues that this Court made a mistake of law when granting the motion to substitute. As noted in the text above, however, that argument is properly raised by a Rule 60(b)(1) motion. Therefore, it should not be considered under Rule 60(b)(6). See Warren v. Garvin, 219 F.3d 111, 114 (2d Cir. 2000) ("Rule 60(b)(6) only applies if the reasons offered for relief from judgment are not covered under the more specific provisions of Rule 60(b)(1)-(5)"); United States v. Erdoss, 440 F.2d 1221, 1223 (2d Cir. 1971) ("Rule 60(b)(1) and 60(b)(6) are mutually exclusive, so that any conduct which generally falls under the former cannot stand as a ground for relief under the latter"). Therefore, the Court declines to perform a Rule 60(b)(6) analysis.

[4]As the Second Circuit has explained: "In the original version of [Rule 60(b)(1)], relief was permitted a party for 'his mistake'; the 1946 amendments changed to language to make clear that relief from judgment was available for any mistake, including the mistake of the court." In re 310 Associates, 346 F.3d at 35.

latter's ignorance of the law or of the rules of the court, or his inability to efficiently manage his caseload." United States v. Cirami, 535 F.2d 736, 739 (2d Cir.1976); see also Pelican Prod. Corp. v. Marino, 893 F.2d 1143, 1146 (10th Cir. 1990) ("Carelessness by a litigant or his counsel does not afford a basis for relief under Rule 60(b)(1)").  Moreover, the United States Supreme Court has made it clear that "clients must be held accountable for the acts and omissions of their attorneys."  Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership, 507 U.S. 380, 396 (1993); see also Link v. Wabash R.R., 370 U.S. 626, 633-34 (1962) ("Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent"); Delacruz v. Stern, 1998 WL 852577 at *2 (2d Cir. 1998) (citing additional Supreme Court cases); 12 Moore's Federal Practice 3d, § 60.41[1][c][ii], p. 60-90 ("Courts repeatedly deny relief when they find that the facts and circumstances demonstrate a lack of diligence in pursuing or defending litigation")..

      The Court finds that the mistake committed by Rosenberg's counsel in this case does not rise to the level of excusable conduct under Rule 60(b)(1).  Rosenberg's local counsel failed to take note of the filing of the motion to substitute in July 2003, and also failed to take note of this Court's order granting the motion to substitute in September 2003.  On both occasions, notices were sent to three attorneys at that firm: J. Daniel Sagarin, Margaret Haering and David Slossberg.  Haering was the particular attorney handling this matter, and that she was on vacation at the time the motion originally was filed.  Haering should have checked the status of this case when she returned from vacation.  Rosenberg's argument would have more weight if that was the only oversight committed.  However, his local counsel also failed to notice the order of this Court two months later granting the motion to substitute.  It was not until January, 2004, when Rosenberg's New York counsel attempted to file their appearances in this matter that Rosenberg was alerted to the motion to substitute.  Simply put, this is not the type of mistake that is to be remedied under the mistake provision of Rule 60(b)(1).

Attempting to buttress his argument, Rosenberg notes that"[t]he motion [to substitute] was not served on lead counsel [i.e., his New York counsel], despite all prior motions having been so served."  The record reveals that prior motions and letters had been served on his New York counsel by the defendants, and the Court agrees that the continuation of this practice may have prevented the current situation.  However, it was not until January 2004, that Rosenberg's New York counsel filed their pro hac vice motions, and defendants' counsel was under no obligation to send notice to them until those appearances were filed.[5]  Without an appearance on record, Rosenberg cannot claim that the defendants had a duty to serve his New York counsel with a copy of the motion.  Instead, they had a duty to serve his local counsel, who had filed appearances in this action, and this duty was met.  See Fed. R. Civ. P. 5.

B) "Excusable Neglect"

Again,  Rule 60(b)(1) permits a court to vacate a judgment on the grounds of "excusable neglect." Fed. R. Civ. P. 60(b)(1).  In Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership, 507 U.S. at 394-95, the Supreme Court referred to "excusable neglect" as an "elastic concept," and stated that such a determination is, "at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission.[6]  Moreover, the Supreme Court specifically noted that, "at least for purposes of Rule 60(b), 'excusable neglect' is understood to encompass situations in which the failure to comply with a filing deadline is

---

[5]The Court notes that this two-year delay violates the spirit and the letter of Local R. Civ.P D.Conn. 83.1(d), which provides that a motion for admittance of a visiting lawyer "shall be made promptly . . . ." See also  American Lines, LLC, 2004 WL 2381717, at *8 (explaining importance of local rules). The seriousness of this failure to promptly file motions for admittance is heightened by Rosenberg's claim that his New York counsel were "the laboring oar[s] in this case."

[6]Although Pioneer was interpreting "excusable neglect" in the context of the Bankruptcy Code, the Second Circuit has held that Pioneer applies "beyond the bankruptcy context where it arose." Canfield v. Van Atta Buick/GMC Truck Inc., 127 F.3d 248, 249-50 (2d Cir.1997) (applying Pioneer to a Rule 60(b)(1) claim of excusable neglect).

attributable to negligence." Id. at 394.

Under Pioneer, factors to be considered in evaluating excusable neglect include: (1) the danger of prejudice to the non-movant; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant and his counsel; and (4) whether the movant acted in good faith. Id; State Street Bank & Trust Co. v. Inversiones Errazuriz Limitada, 374 F.3d 158, 177 (2d Cir. 2004). The Second Circuit places the greatest amount of emphasis on the third factor: whether the claimed "excusable neglect" was within the reasonable control of the movant and his counsel. State Street Bank & Trust Co. v. Inversiones Errazuriz Limitada, 374 F.3d at 177; accord Graphic Communications Int'l Union, Local 12-N v. Quebecor Printing Providence, Inc., 270 F.3d 1, 5-6 (1st Cir. 2001) ("the four Pioneer factors do not carry equal weight; the excuse given for the late filing must have the greatest import").

Here, the reason for the neglect was squarely within the control of Rosenberg and his attorneys, particularly Haering. Again, the reason for the neglect include: local counsel's failure to notice the filing of the motion to substitute; local counsel's failure to notice this Court's ruling on that motion; and New York counsel's failure to file appearances in this matter until January 2004–more than two-years after the complaint was filed by Rosenberg. In sum, neglect of this type, and to this degree, cannot be considered to be the type that is "excusable" pursuant to Rule 60(b)(1). State Street Bank & Trust Co., 374 F.3d at 177 ("where a party fails to act with diligence, he will be unable to demonstrate that his conduct constituted 'excusable neglect'")(quoting Martella v. Marine Cooks & Stewards Union, 448 F.2d 729, 730 (9th Cir. 1971)); see also Ramseur v. Beyer, 921 F.2d 504, 506 (3d Cir. 1990) (recognizing that a court must be satisfied that attorneys acted with substantial diligence before finding "excusable neglect").

Consequently, Rosenberg's motion for relief from order **[Doc. #61]** is **DENIED**.

**III.    Motion to Intervene [Doc. #59]**

Because the Court has denied Rosenberg's motion for relief from the order substituting iXL as the plaintiff in this action, he is not a party.  Accordingly, the Court must next address Rosenberg's motion to intervene, which argues that, "[a]s a shareholder of iXL, [he] has a pecuniary interest in the outcome of the action, and a statutory right to pursue his claim under Section 16(b), which entitled him to intervene as of right."  The defendants claim that Rosenberg has no financial interest in the outcome of this litigation, and, therefore, has no right to intervene.

Federal Rule of Civil Procedure 24(a) provides:

> Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Rosenberg's motion to intervene seems to be based primarily on an argument that Section 16(b) of the 1934 Act provides him with statutory right to do so, thereby implicating Rule 24(a)(1).

Section 16(b) provides in relevant part:

> Suit to recover such profit may be instituted at law or in equity in any court of competent jurisdiction by the issuer, or by the owner of any security of the issuer in the name and in behalf of the issuer if the issuer shall fail or refuse to bring such suit within sixty days after request or *shall fail diligently to prosecute the same thereafter*; but no such suit shall be brought more than two years after the date such profit was realized.

15 U.S.C. § 78p(b) (emphasis added).  It is true that, "[i]n the furtherance of the statutory purpose [of Section 16(b)] and to guard against possible conflicting loyalties, courts have liberally permitted intervention by security holders." Molybdenum Corp. of America v. Intern. Mining Co. 32 F.R.D. 415, 419 (S.D.N.Y. 1963) (citing cases); see also Cook & Feldman, Insider Trading Under the Securities Exchange Act, 66 Harv.L.Rev. 385, 414 (1953).  However, Rosenberg has

not cited any decision which has held that Section 16(b) contains a statutory right of intervention. To the contrary, the Court finds that the only decision cited by Rosenberg addressed intervention in a Section 16(b) action via Rule 24(a)(2), which provides for permissive intervention, and not a statutory right under Rule 24(a)(1). See Molybdenum Corp., 32 F.R.D. at 420. The Molybdenum decision did note that several commentators held the view that Section 16(b), standing alone, gives a security holder an absolute right to intervene without the necessity of satisfying the requirements of Rule 24(a)(2). However, the Molybdenum deicison also noted that "the courts have not yet extended the liberal policy of intervention to reach that result." Therefore, the remaining portion of the court's analysis focused on permissive intervention under Rule 24(a)(2).

This Court has been unable to find any case decided since Molybdenum that does explicitly recognize a statutory right to intervention under Section 16(b). In Nedick's Stores, Inc. v. Genis, 34 F.R.D. 235, 236 (S.D.N.Y. 1963), the proposed intervenor claimed that, under Section 16(b) and under Rule 24(a)(1), she had an absolute right to intervene because the plaintiff had failed diligently to prosecute the action. The court rejected that claim on the ground that "the time interval is too short to justify the conclusion that plaintiff has not been diligent." Id. Thus, although the court seemed to accept the plaintiff's claimed right of statutory intervention, it did not specifically address that point.

Although the language used in Section 16(b) clearly provides a security owner with the ability to *institute an action*, the Court finds that it does not provide a security owner with an absolute *right to intervene* in the issuer's action. Rather, it provides that a security owner may intervene if the issuer "*shall fail diligently to prosecute*" the action. This conclusion is buttressed by a comparison of Section 16(b) with other statutes which courts have found to provide a right of intervention under Rule 24(a)(1). See, e.g., Brotherhood of R.R. Trainmen v. Baltimore & O.R. Co., 331 U.S. 519, 526 (1947) (statute conferred right to intervene by stating that

9

"[r]epresentatives of employees of a carrier, duly designated as such, may intervene and be heard in any proceeding arising under this Act affecting such employees"); Ruiz v. Estelle, 161 F.3d 814, 816 (5th Cir. 1998) (petitioners had right to intervene under 18 U.S.C. § 3626(a)(3)(F), which provides a "right to intervene in any proceeding relating to such relief"); Phar-Mor, Inc. v. Coopers & Lybrand, 22 F.3d 1228, 1230-31 (3d Cir. 1994) (11 U.S.C. § 1109(b), provides creditors with an unconditional right to intervene in bankruptcy proceedings pursuant to Rule 24(a)(1), because it provides that a creditors' committee "may raise and may appear and be heard on any issue in a case [under Chapter 11]"); United States v. State of Mississippi, 958 F.2d 112, 115 (5th Cir. 1992) (concluding that 20 U.S.C. § 1717, which states that "a parent or guardian of a child ... transported to a public school in accordance with a court order ... may seek to reopen or intervene in the further implementation of such court order," provides only a conditional right of intervention, while 33 U.S.C. § 1365(b)(1)(B), which provides that "any citizen may intervene as a matter of right," provides a statutory right of intervention); see also Harris v. Reeves, 946 F.2d 214, 222 & n. 10 (3d Cir. 1991) (Rule 24(a)(1) does not apply to state statutes, however unconditional); Fuel Oil Supply & Terminaling v. Gulf Oil Corp., 762 F.2d 1283, 1287 (5th Cir.1985) (holding that 11 U.S.C. § 1109(b) does not create an unconditional or "absolute" statutory right to intervene in bankruptcy "adversary proceedings," as distinguished from a bankruptcy "case"); United States v. Hooker Chems. & Plastics, 749 F.2d 968, 977-82 (2d Cir. 1984) ("citizen suit" provisions of the Clean Water Act, 33 U.S.C. § 1365, the Safe Drinking Water Act, 42 U.S.C. § 300j-8, and the Resource Conservation and Recovery Act, 42 U.S.C. § 6972, provide unconditional right to intervene in most litigation under those acts, but not in suits brought by the United States under its "emergency powers" provisions of these same three acts). Consequently, the Court finds that Rosenberg does not have a statutory right to intervene pursuant to Section 16(b).

Rosenberg also claims, on the final page of his brief, that he has a pecuniary interest in

this litigation.  This claim appears to implicate Rule 24(a)(2).  Intervention as a matter of right under Rule 24(a)(2) is permitted when the party proposing to intervene meets the following requirements: (1) the motion to intervene must be timely filed; (2) the party must demonstrate an interest in the property or transaction which is the subject of the underlying action; (3) the party must show that a prejudice to that interest will result if intervention is not permitted; and (4) the applicant's interest must not be adequately protected by any of the existing parties.  Security Pacific Mortgage and Real Estate Services, Inc. v. Republic of Philippines, 962 F.2d 204, 208 (2d Cir. 1992); Farmland Dairies v. Comm'r of N.Y. Dep't of Agriculture, 847 F.2d 1038, 1043-44 (2d Cir. 1988).  "Failure to satisfy any one of these requirements is a sufficient ground to deny the application."  Farmland Dairies, 847 F.2d at 1043.  As noted previously in this ruling, "[i]n the furtherance of the statutory purpose [of Section 16(b)] and to guard against possible conflicting loyalties, courts have liberally permitted intervention by security holders."  Molybdenum Corp., 32 F.R.D. at 419.  Even under the liberal approach taken in Section 16(b) actions, however, the Court finds that Rosenberg does not have a right to intervene.

Even assuming that Rosenberg's motion to intervene was timely filed,[7] he cannot demonstrate that he has "an interest in the property or transaction which is the subject of the underlying action."  Security Pacific Mortgage, 962 F.2d at 208.  In Gollust v. Mendell, 501 U.S. 115, 125-26 (1991), the United States Supreme Court stated:

[We have no] difficulty concluding that, in the enactment of § 16(b), Congress

---

[7] Given the procedural posture in this case, even the question of whether Rosenberg's motion to intervene was "timely filed" is complicated.  On one hand, Rosenberg did file his motion to intervene immediately after discovering that iXL had been substituted as the plaintiff in this action.  On the other hand, his motion came four months after the Court granted the motion to substitute, and after the substituted plaintiff and the defendants had engaged in settlement negotiations and reached a proposed settlement.  A hearing on the parties' motion seeking approval of that proposed settlement is scheduled before the bankruptcy court.  Because this Court finds that Rosenberg cannot meet the other requirements of Rule 24(a)(2), it need not resolve the question of whether his motion was timely.

>understood and intended that, throughout the period of his participation, a plaintiff authorized to sue insiders on behalf of an issuer would have some continuing financial interest in the outcome of the litigation, both for the sake of furthering the statute's remedial purposes by ensuring that enforcing parties maintain the incentive to litigate vigorously, and to avoid the serious constitutional question that would arise from a plaintiff's loss of all financial interest in the outcome of the litigation he had begun.

Consequently, under Gollust, if a plaintiff has standing at the commencement of the suit, an involuntary change in his status as a security holder resulting from a restructuring will not affect his standing to maintain the suit so long as minimal constitutional requirements are satisfied through the presence of some financial interest in the outcome of the litigation. Id; see generally 51 A.L.R. Fed. 785 (discussing who is an owner of the issuer's securities).

According to the Wood affidavit, iXL was merged into Scient in November, 2001. As a result of this merger, Scient owns 100% of the outstanding shares of iXL, and iXL shareholders at the time of the merger received shares of Scient on a share-for-share basis. This fact alone would be insufficient to deny Rosenberg his financial interest in this litigation. See Gollust, 501 U.S. at 125 (plaintiff could continue to prosecute the action after his interest in the issuer is exchanged in a merger for stock in the issuer's new corporate parent). Unlike the new parent company in Gollust, however, Scient is no longer a viable entity. As noted previously in this ruling, in 2002, Scient, Scient Enterprises, Inc., iXL and iXL, Inc., filed for bankruptcy protection in the Southern District of New York. Scient has been de-listed from the NASDAQ securities exchange, and substantially all of the Debtors' assets were sold to SBI and Company, a privately held company, in a sale approved by the bankruptcy court. iXL claims that the Debtors have liabilities in excess of $33 million, and, therefore, even if Rosenberg were to receive the full $17 million in damages sought in this action, that recovery would go to secured creditors, and not to unsecured creditors such as individual holders of Scient securities. Affidavits and other supporting papers filed by iXL support this calculation of damages, and Rosenberg has not set

forth any similar evidence that would contradict this calculation.  Therefore, although the Supreme Court recognized in <u>Gollust</u> that an "indirect interest derived through one share of stock" is sufficient to confer a financial interest in the litigation, the Court finds that Rosenberg cannot meet that low threshold.

Moreover, even if Rosenberg retains a financial interest in the outcome of this action, he has not demonstrated that it is not adequately being represented by the Committee for Unsecured Creditors in the bankruptcy action.  Therefore, Rosenberg cannot meet the fourth criteria under Rule 24(a)(2), namely that his "interest must not be adequately protected by any of the existing parties."

Because the Court finds that Rosenberg cannot meet several of the criteria under Rule 24(a)(2), his motion to intervene **[Doc. # 59]** is **DENIED.**

**IV.     Motion for Stay [Doc. #58]**

Rosenberg also has moved for an order from this Court staying any consideration of any settlement of the underlying claims and precluding the present plaintiff and the defendants from concluding any settlement pending further order of this Court.  Because the Court has denied Rosenberg's motion to relief and motion to intervene, his motion to stay **[Doc. #58]**  is **DENIED** as moot.

SO ORDERED this   31st   day of March 2005 at Hartford, Connecticut.

　　　　　　　　　　　　　　　　　　　　　　　　　　 /s/ CFD　　　　　　　　　　　
　　　　　　　　　　　　　　　　　　　　　　　　**CHRISTOPHER F. DRONEY**
　　　　　　　　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT JUDGE**